# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ONEOK, INC., and MID CONTINENT MARKET CENTER, L.L.C.,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., and AIG TECHNICAL SERVICES, INC.,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)　No.  06-CV-200 GKF-SAJ<br>)<br>)<br>)<br>)<br>)<br>) |

## **OPINION AND ORDER**

Comes on for decision Plaintiffs' Motion to Compel Defendants' Production of Documents (Dkt. # 94) and the court, having considered the arguments and authority presented by counsel in their filings and at hearing, finds the motion shall be denied in part and sustained in part as set forth herein.

### **A.  Interpretive Materials for Policy Language**

Plaintiffs' Request for Production Nos. 13 and 14 request interpretive memoranda including promotional and training materials that reference or interpret twelve specific policy provisions set forth on pages 3-4 of Plaintiffs' motion. Counsel for Defendants represented that he inquired within the claims group and could find no one who had seen, knew of or had relied upon any interpretive language within the materials described by Plaintiffs' request that relate to the twelve policy provisions specified by Plaintiffs.  Plaintiffs' Motion to Compel is denied in regard to Requests 13 and 14.  Defendants are directed to

submit a supplemental response within 14 days from the date of this order in which Defendants' state that such inquiry has been made and no one could be found who has seen, knew of or relied upon any interpretive language within the materials described by Plaintiffs' request that relate to the twelve policy provisions specified by Plaintiffs.

### B.  Underwriting Materials

Through Request for Production No. 16 Plaintiffs seek production of "[t]he complete underwriting file pertaining to the underwriting and issuance of the Policy". Plaintiffs argue that the underwriting file may also have interpretive language that relates to the twelve policy provisions specified by Plaintiffs.  Counsel for Defendants has agreed to and is hereby directed to review the underwriting file and to produce any documents or memorandum that reference or interpret the twelve policy provision and to submit a supplementary response reflecting such review within 14 days from the date of this order.

### C. Discovery of Reserves

Through Request for Production Nos. 20-22 , Plaintiffs seek production of "[a]ll documents containing or reflecting the reserves established for any claims alleged in" three of the underlying claims[1] asserted against Plaintiffs. Defendants have objected to production of reserves information on grounds of "the attorney-client privilege, work product exemption, party communication exemption or other relevant and applicable privilege or exemption."    Defendants bear the burden of proving the existence of a privilege. Defendants did not present argument in support of a  privilege or exemption in their brief and/or in oral argument. No privilege log is submitted as required by local rule LCvR26.4.

---

[1]  These are referenced as the Smith/Gilley lawsuit, the Woody's/Decor lawsuit and the Cargill lawsuit.

The argument Defendants do pursue with vigor and authority is that the reserves are irrelevant to all issues in this case, cannot lead to admissible evidence and are not discoverable. Both parties agree there is a split of authority on the question of whether reserves established by an insurance company are discoverable in a bad faith lawsuit. As suggested by the following West Virginia court, each case must be decided on its own facts.

> We observe from our research that courts in other jurisdictions generally do not find that reserve information is relevant in cases involving insurance coverage, but have sometimes found relevancy in bad faith cases. *See e.g. Lipton v. Superior Court,* 48 Cal.App.4th 1599, 56 Cal.Rptr.2d 341 (1996); *Tackett v. State Farm Fire & Cas.,* 558 A.2d 1098 (Del.Super.Ct.1988); *Groben v. Travelers Indem. Co.,* 49 Misc.2d 14, 266 N.Y.S.2d 616, 619 (N.Y.Sup.Ct.1965) (finding "[b]ad faith is a state of mind which must be established by circumstantial evidence" and to this extent "[t]he actions of the ... [insurance company regarding reserves] are relevant."). *But see Fid. & Deposit Co. of Maryland v. McCulloch,* 168 F.R.D. 516, 525 (E.D.Pa.1996) (concluding that reserve information was irrelevant because "such data would merely suggest what [the plaintiff] can already demonstrate ..., namely, that the cost of defending the ... claims increased over time"). These cases make it clear that a case-by-case examination of the factors we have previously identified is necessary for a court to be able to conclude that information involving reserves is admissible or "reasonably calculated to lead to the discovery of admissible evidence" and, as a result, is subject to disclosure.

*State ex rel. Erie Property & Casualty Ins. Co. V. Mazzone,* 625 S.D. 2d 355, 360 (W.Va. 2005).

The *Mazzone* court concluded, "The case at hand has not proceeded to the point where

we have the information necessary to meaningfully consider whether the reserve information is relevant." *Id.* at 360.

Defendants state in their brief that "the Tenth Circuit has ruled against compelling reserve information in *Signature Development Co. V. Royal Insurance Co. Of America,* wherein the court refused to compel the insurer to produce its reserve information . . . ." 230 F.3d 1215, 1223 (10th Cir. 2000). At oral argument counsel agreed that the *Signature* case does not stand for the proposition stated[2] and there is no Tenth Circuit authority on this question.

Cases from other jurisdictions have denied the production of reserve information depending upon the facts of each case. *See e.g.*, *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 613-15 (E.D. Pa. 1991) (motion to compel denied, for the reserve information sought was only tenuously relevant, if relevant at all); *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 114 (D. N.J. 1989) (motion to compel reserve data denied; reserve information found to be irrelevant to the underlying issues, as it was "not determinative of insurer's interpretation of policy language."); *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D.D.C. 1986) (motion to compel reserve information denied; court deemed information sought to be "of very tenuous relevance, if any relevance at all."); *Union Carbide Corp. v. Travelers Indem. Corp.*, 61 F.R.D. 411, 413 (W.D. Pa. 1973) (court did "not believe that the proper end of discovery--expedition of the litigation either by narrowing the area of controversy or by avoiding unnecessary testimony or by providing

---

[2] Counsel are admonished that such misstatements in a brief should be brought to the court's attention immediately upon being discovered.

a lead to evidence--will be served by allowing discovery of the reserves in question.")

The position of those denying reserve information is well summarized by the Illinois court.

> The court does not agree with plaintiffs' suggestion that information concerning reserves set up by USFG as a result of plaintiffs' claim is relevant to the issues involved in this case. Contrary to plaintiffs' suggestion, the establishment of a reserve by an insurance company is not a concession that the company acted in bad faith in denying a claim. Nor does it constitute evidence that the company has engaged in unfair claims practices. The establishment of reserves by insurance companies may be nothing more than good business or good accounting practice, or compliance with regulatory requirements. The establishment of a reserve has no bearing upon an insurer's liability in a bad faith action or an action for unfair claims practices.

*Exchange Nat'l Bank of Chicago v. U.S. Fidelity & Guaranty Company,* 1985 WL 1773(N.D.Ill. 1985).

However, this court finds the exhaustive analysis by Magistrate Judge Wayne Brazil in *Bernstein v. Travelers Insurance Company*, 447 F.Supp.2d 1100 (N.D. Cal. 2006) is the most convincing of the authority presented.   Judge Brazil considers with extraordinary detail each argument presented in support of refusing the production of reserve figures and finds them not persuasive.

> These kinds of considerations have helped persuade a number of other courts to conclude, in the specific settings they faced, that the reserve amounts were irrelevant to the coverage or bad-faith disputes before them (some in third-party actions, and some in actions by insureds directly against their own insurers) and, therefore, were not discoverable. As we have tried to work our way through this dispute, however, we have concluded that these points have less persuasive force than they appear to have at first blush and that, at least when assessed in light of substantive California insurance law, they are outweighed by competing

considerations.

*Bernstein* at 1104.

Judge Brazil reviews the narrow reach of discovery under Federal Rule of Civil Procedure 26(b).

> Under that Rule, the test is not admissibility, but whether there appears to be a sufficient connection between the target of the discovery probe and the issues to be litigated to support a conclusion that there is a decent chance that the party propounding the discovery would be able to use the information it uncovers either as evidence or to help find evidence. Thus, the fact that setting a reserve is not an admission of liability means only that plaintiffs could not use evidence about the reserves to directly establish an element of their claim-but that fact is hardly grounds for concluding that this kind of information may never be discoverable.

*Bernstein* finds no important distinction between third party claims, as found in the case at bar, and first party claims. Judge Brazil does suggest the argument may be more compelling in third party cases.

> Nor can we ascribe great significance (in resolving the issue before us) to the fact that, at least generally, the setting of a reserve (at least in something more than a nominal amount) may have more direct probative utility in third party actions than in first party cases.

> [There is a closer apparent proximity between the amount of a reserve and the coverage issue in a third party action (alleging bad faith in declining to fund an insured's defense) than in a first party case.

> While that apparent proximity may make the argument in favor of compelling disclosure of reserves more compelling in third party cases, it certainly does not preclude the possibility that reserves might be discoverable in some first party cases.

> In assessing the "discovery relevance" of the targeted information, we must consider all the litigation purposes for which plaintiffs might use it-as

> direct evidence on a disputed issue, as grounds for challenging or testing positions taken during the litigation by the defendants, or as means to help develop evidence that could be used, directly or circumstantially, to litigate more reliably the principal issues in the case.

*Bernstein* at 1105, 1106.

Judge Brazil's opinion relies heavily on the California Court of Appeals opinion in *Lipton v. Superior Court,* 48 Cal.App.4th 1599, 56 Cal.Rptr.2d 341 (2nd Dist. 1996) in rejecting the public policy argument that insurance companies will set artificially low reserves if they know they will be made public.

> Counsel for the carrier had argued that if insurance companies knew that their reserves would be discoverable, they would feel pressure either to artificially lower or raise the reserve amounts-depending on what inferences or admissions they most feared might be argued in litigation arising out of the particular file. Largely because of the strength of the disciplining power of the regulatory environment in which carriers operate in California, Justice Croskey and his colleagues were not persuaded that there was a sufficient risk that any such pressures would distort reserve figures to justify creating even a low-level presumption against discovery of loss reserve information.

*Bernstein* at 1107.

Bad faith cases against insurance companies necessarily have a subjective intent component that can be difficult to prove. In the case at bar, Plaintiffs argue that the Defendants offered an unrealistically low amount on third party claims to keep the cases from settling, which caused the cases to be set for trial, which exposed the Plaintiffs to a claim for punitive damages. This, Plaintiffs allege, forced Plaintiffs to contribute more than a reasonable amount in settlement to avoid the risk of punitive damage claims at trial. To determine Defendants' subjective intent, Plaintiffs urge they need to examine all of the

Defendants' objective actions, including the setting of reserves.

The *Bernstein* and the *Lipton* courts recognized this subjective component and difficulty of proof in a bad faith case.

> The *Lipton* court recognized that at least in some settings a carrier's subjective state of mind, i.e., what it actually knew and thought, and what motives animated its conduct, could constitute critical areas of inquiry in bad faith cases, and thus could be fully fair game for discovery.
> . . . .
> Central to plaintiffs' theory of the case is that Travelers repeatedly and knowingly refused to release payments that it knew it owed on the claims, and that Travelers' business strategy over at least the first 20 months of the claims processing period was to make unjustifiable demands for proof of claims, to unjustifiably delay making payments, and then to pay less than it actually believed it owed, all in order to soften Bernstein up for a settlement offer that Travelers knew was appreciably smaller than the real value of plaintiffs' claims. Critical to this theory of the case is a posited self-conscious disconnect (a large, unbridgeable gap) between, on the one hand, what Travelers was communicating to, demanding of, and paying its insured and, on the other, what Travelers actually thought it owed and would owe under the claims. Under this theory, what Travelers' "internal assessment of the subject claim actually was at various junctures is the critical factual issue in the litigation.

*Bernstein* at 1108.

The court concludes Plaintiffs' Motion to Compel should be sustained in regard to Request for Production Nos. 20-22.  A supplemental discovery response complying with said request shall be submitted within 14 days from the date of this order.  As in *Bernstein,* such production is hereby subject to a Protective Order prohibiting Plaintiffs or their counsel from using the formation for any purpose other than this litigation and from disclosing it to anyone who is not an officer or agent of this court or a party to this action.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Compel Defendants'

Production of Documents (Dkt. # 94) is sustained in part and denied in part as set forth herein.

DATED THIS 28th Day of September, 2007.

*Sam A. Joyner*
Sam A. Joyner
United States Magistrate Judge